UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARY J. BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-00234-SRC |
| | ) | |
| ST. LOUIS NH, LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Memorandum and Order</u>**

Flip-flopping tends to get a court's attention, particularly when it comes to conflicts of

interest. And conflicts rules exist to prevent the inexorable tension that comes from serving

parties with differing interests. When attorney Johnathan Steele flip-flopped from stating he

represented both wrongful-death claimants to insisting that he only represented one, the Court

inquired further. And good thing, because the Court's inquiry and appointment of separate

counsel ultimately resulted in a material change in the settlement terms.

After approving the revised settlement, the Court ordered Steele to show cause why it

should not sanction him for various violating various ethical rules. Based on Steele's response

and the facts in the record, the Court finds that Steele violated Rule 11 and imposes sanctions on

him.

I. **Background**

In this wrongful-death action, Steele stated to the Court that he represented two

claimants, Mary Baker and Maria Loper; he further stated that Baker would receive the lion's

share of the settlement and Maria would receive nothing, so as not to jeopardize Maria's receipt

of governmental benefits. When the Court inquired whether he had a conflict in representing

Baker and Maria, Steele unequivocally said no.  Months later, Steele changed his position and stated that he never represented Maria.  After a hearing, the Court found Maria incompetent and appointed a guardian ad litem, who recommended that Maria receive a significant portion of the settlement proceeds in a special needs trust, which would not jeopardize her receipt of benefits.

Baker, represented by Steele, brought negligence and wrongful-death claims against many defendants for the death of her mother—Rosie Lee Loper—in a nursing home.  Doc. 1 at 19–25 (The Court cites to page numbers as assigned by CM/ECF).  Four heirs survived Rosie Lee:  her children Maria, Baker, Gary Loper, and her great-grandson Altavian Saddler.  Doc. 70, Settlement Conf. Tr. at 4:14–6:14 (The Court uses first names for clarity and not to imply familiarity).  Baker then dismissed some of the defendants and claims, and only Baker's wrongful-death claim against St. Louis NH remained.  *See* docs. 21, 48.  Steele, on behalf of Baker and Maria, and St. Louis NH, on its own behalf, proposed a settlement agreement with a proposed division of the proceeds as follows:  Baker 77.5%, Gary Loper 17.5%, Altavian Saddler 5%, and Maria Loper nothing.  *See* doc. 70, Settlement Conf. Tr. at 27:3–27:18, 36:17–38:15; doc. 74 (Baker's proposed allocation of the settlement proceeds).  Steele also filed Maria's declaration, which stated that she consents to receiving none of the settlement proceeds.  Docs. 56, 73.  Baker then moved the Court to approve this settlement, as required by Missouri law.  Doc. 49; *see* Mo. Rev. Stat. § 537.095.3.

The Court held a settlement-approval hearing on February 6, 2025, and inquired about the physical and mental capacity of Maria.  *See* doc. 63; doc. 70, Settlement Conf. Tr. at 6:15–7:6.  Steele stated that Maria "has mental capacity" and "is receiving several public benefits."  *See id.*  The Court then asked about the status of Maria's legal representation, to which Steele declared that his firm "represent[s] Maria Loper."  *See id.* at 7:7–7:17; *see also id.* at 8:3–8:4

2

(attorney Thaddeus Juilfs, representing St. Louis NH, also noted that "Maria . . . is represented with counsel here today."). Steele clarified, however, that he does not represent Gary Loper. *Id.* at 7:17–18.

The Court asked Steele if the dual representation of Baker and Maria constituted a conflict of interest, because the sisters had adverse interests—settlement proceeds going to one of them would diminish the amount that the other could receive. *See id.* at 8:8–8:12; 9:5–9:11; *see also Miess v. Port City Trucking, Inc.*, No. 4:09-cv-01124 CDP, 2010 WL 2519622, at *1 (E.D. Mo. June 14, 2010) (In a wrongful-death action, potential beneficiaries' "interests will be adverse, as each party with a claim to the proceeds of any settlement or recovery is competing for a piece of the pie."); *Floyd v. Shaw*, 830 S.W.2d 564, 566 (Mo. Ct. App. 1992) ("There is a point at which the interests of several claimants for damages for the same wrongful death diverge. . . . When the money is in hand, the respective claimants become adversaries in the carving of the pie, and all are entitled to the unencumbered services of their individual counsel.").

Steele "disagree[d] that there is a conflict" of interest, and professed that "[i]t is good advice for [Maria] to not receive any of the[] settlement proceeds," because "[s]he's not eligible for a special needs trust" and would therefore "lose [her] public benefits" upon receipt of any settlement funds. Doc. 70, Settlement Conf. Tr. at 8:13–9:4. Steele even claimed that Maria "never asked for a cent" and specifically asked Steele "to provide her documentation so that she could waive her right" to appear at the February 6 hearing; therefore, Steele argued, Baker's and Maria's interests are not "adverse to each other." *Id.* at 9:14–9:19.

Based on Steele's representations, the Court questioned whether Steele indeed provided Maria with adequate notice of the February 6 hearing. *See* doc. 75 at 2–3. The only evidence

that Steele produced suggesting that Maria had notice was Maria's declaration, which the Court found dubious and inconclusive as evidence of notice. *Id.* First, because Maria was "legally disabled," doc. 49 at ¶ 6, the Court questioned whether she possessed the requisite mental capacity to sign the declaration in the first place, doc. 75 at 2–3. Second, because Steele simultaneously represented both Baker and Maria, and only Baker received a portion of the settlement, the Court questioned whether Steele's dual representation undermined the adversarial process. *See id.*

To determine whether Maria had adequate notice of the February 6 hearing, the Court summoned and questioned her during a Zoom hearing on April 15, 2025. *See* doc. 78. During this hearing, Maria gave "mostly nonresponsive, nonsensical, and incomplete answers" to the Court's questions. *Id.* at 2. The Court determined that Maria was incompetent, and that Steele "has not," "cannot," and "will not" "effectively represent Maria so long as he also represents Baker." *Id.*

The Court accordingly appointed Jeremiah W. Nixon as Maria's guardian ad litem, with instructions to investigate and report on Maria's interest in the settlement proceeds. *See* doc. 78 at 4–5. Nixon's report revealed that (i) it was in Maria's best interest to receive half of Baker's proposed settlement allocation, so that both sisters receive an equal portion, and (ii) Maria was indeed eligible for a special needs trust, contrary to Steele's representations. *See* doc. 84 at 5, 7. The Court agreed, and approved the settlement with a revised allocation that awarded 38.75% to Maria, to be held in a special needs trust. Doc. 95 at 5; *see* doc. 96. The Court also observed that Baker and Maria had conflicting interests. *See* doc. 70, Settlement Conf. Tr. at 8:8–10:9; doc. 75 at 1–2.

## II.        Discussion

The Court has adopted the Missouri Supreme Court's Rules of Professional Conduct.  *See* E.D. Mo. R. Disciplinary Enf't R. IV.B.  To remedy violations of the Rules of Professional Conduct or Rule 11, the Court has many options.  *See* E.D.Mo. L.R. 12.02.  The Court may impose sanctions pursuant to its inherent authority, *see Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)) (internal quotations omitted), Fed. R. Civ. P. 11, 16, or 37, or any other applicable authority, and may initiate civil or criminal contempt proceedings against an attorney appearing in an action in this Court.

Before imposing sanctions, the Court must provide counsel with both notice and an opportunity to be heard.  *See* Fed. R. Civ. P. 11(c)(1); E.D. Mo. Rules Disciplinary Enf't R. IV.A; *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005).  The Court therefore issued its Show-Cause Order.  Doc. 97.  Steele responded.  Doc. 98.  Based on Steele's response and the entire record, the Court finds that Steele violated Rule 11.

Rule 11 provides that by filing a "pleading, written motion, or other paper" with a court, an attorney certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).  Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact."  *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citation modified)).

"[A] court may sanction attorneys under Rule 11(b)(3) for factual assertions they know—or after reasonable investigation should have known—are false or wholly unsupported." *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023).  The Eighth Circuit reviews "[a]n award of sanctions under Rule 11 . . . for an abuse of discretion." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003); *see also Teamsters Nat'l Freight Indus. Negotiating Comm. ex rel. Teamster Loc. Union Nos. 116, 120, 123, 346, & 544 v. MME, Inc.*, 104 F.3d 364, 364 (8th Cir. 1996) (per curiam) ("Rule 11 . . . dictates that the imposition of sanctions . . . is discretionary with the district court.").

At the August 7 hearing, Steele admitted to preparing Maria's declaration.  *See* doc. 90.  The declaration contained the following statements:

- "I request the Court to review and approve the execution of the Settlement Agreement."

- "I have read the **Confidential Settlement Agreement and Release** ('Settlement Agreement'), which will be introduced as an Exhibit at the Wrongful Death Settlement Hearing, and agree to its terms."

- "I request the Court to allocate the disbursement of the net proceeds of the proposed settlement as set forth in the Settlement Statement."

- "I also request the Court to review and approve the attorney's fees and reimbursement of litigation expenses to Steele Law Firm, LLC and to authorize deduction of these sums from the total settlement as set forth in the Settlement Statement."

- "I am aware that a settlement approval hearing is set for February 6, 2025, at 2:30 pm Central Time in Courtroom 14 N – St. Louis before Chief District Judge

6

Stephen R. Clark to approve the settlement of the wrongful[-]death claims made in the above-captioned matter."

- "I understand that the Court's approval of this settlement would bring the entire case to a close and neither I nor anyone else can ever in the future, seek a monetary recovery from Defendants related to the claims presented in this case. The Court's approval of this proposed settlement brings this matter to a close forever."

- "I am aware that I have the right to retain my own counsel and that the case could have been tried in a jury trial which would have resulted in a loss or a win in an amount that is uncertain, and knowing the uncertainties and the lack of predictability of a jury trial, I consent to waive the opportunity to have a trial by jury."

Doc. 73 at 2–3.  When Steele filed Maria's declaration, he certified its factual accuracy. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 544–45 (1991) (noting that "declarations, affidavits, and the like" are included under the definition of "other papers" and therefore "must satisfy the certification requirement").  Based on the Court's finding Maria incompetent at the April 15 Zoom hearing, the Court questioned whether Maria's statements in her declaration had, or even could have had, evidentiary support at the time Steele filed the declaration.  *See* doc. 97 at 8–9.  The Court asked Steele to show cause why he did not violate Rule 11 for filing this declaration.  *See id.*

Steele claims to have "certified the filings based on reasonable evidentiary support available at the time:  the statutory presumption [of competence], [Baker's] confirmation, and the Docu[s]ign authentication."  *Id.*  He cites Baker's testimony and claims that Maria was never

7

adjudicated incompetent by a court. *Id.* at 10–11. And he asserts that he was "not required to launch independent competency investigations into non-client beneficiaries who have never been adjudicated incompetent." *Id.* at 13.

Regarding the statutory presumption, Steele cites Mo. Stat. Rev. § 475.075, *Dorsey v. Dorsey*, 156 S.W.3d 442 (Mo. App. 2005), *State v. Collins*, 718 S.W.3d 130 (Mo. Ct. App. 2025), and *Lee v. Hiler*, 141 S.W.3d 517 (Mo. Ct. App. 2004) and argues that "Missouri law presumes all adults are competent absent a formal adjudication." Doc. 98 at 9–11. Section 475.075 regards the procedures for appointing a guardian, guardian ad litem, or conservator for individuals a court deems incompetent. *See* Mo. Stat. Rev. § 475.075. *Dorsey* is about an individual's competence to execute a codicil. *See* 156 S.W.3d at 444–52. *Collins* involves an individual's competence to testify in Court, and discusses the presumption in favor of a witness's competence and the exceptions to that presumption. *See* 718 S.W.3d at 139–41. And *Hiler* concerns three people's competence to sign a warranty deed and transfer ownership of a farm. *See* 141 S.W.3d at 522–26.

While the statute and all three cases discuss mental capacity, Steele's reliance on them confuses the Rule 11 inquiry. By its text, the rule applies whenever an attorney files a "pleading, written motion, or other paper" with a court. Fed. R. Civ. P. 11(b). The Rule "imposes a duty on attorneys to certify that . . . *any papers* filed with the court are well grounded in fact." *Adams*, 863 F.3d at 1077 (citing *Cooter & Gell*, 496 U.S. at 393) (emphasis added). Steele was aware of Maria's "intellectual disability or autism." Doc. 98 at 10. His motion for the Court's approval of the parties' settlement also states that Maria is "legally disabled." Doc. 49 at ¶ 6. Even assuming that the authority Steele cites establishes that "Missouri law presumes all adults are competent absent a formal adjudication," doc. 98 at 9–10, he was still obligated to determine

8

whether the statements he drafted in her declaration would have evidentiary support.  *See Adams*, 863 F.3d at 1077.

Steele also claims that he conducted a "pre-filing inquiry" that was "objectively reasonable."  Doc. 98 at 13.  He submits text messages between his law firm and Baker, in which someone at his firm asked Baker whether she is Maria's legal guardian and whether Maria can sign for herself.  *Id.*; *see* doc. 98-2.  Steele claims that by asking these questions, he was "address[ing] the key legal risk:  settling without a guardian."  Doc. 98 at 13.  He then cites *Braughton v. Esurance Ins. Co.*, 466 S.W.3d 1 (Mo. Ct. App. 2015) for the proposition that "a settlement judgment is 'voidable' if entered into on behalf of a person not represented by a duly-appointed guardian where one is required."  *Id.*  Steele says that "[b]y confirming that no guardian existed and that Maria could sign, Steele took reasonable steps to ensure the settlement would not be voidable under *Braughton*."  *Id.*

Steele misplaces reliance on *Braughton*.  In *Braughton*, the Missouri Court of Appeals said that if an incapacitated person "was not represented by a duly-appointed next friend or guardian, any judgment entered by the trial court in the proceeding is voidable."  *Braughton,* 466 S.W.3d at 11.  Such judgment is "invalid . . . unless the trial court found that the [person's] interests were adequately protected."  *Id.  Braughton* provides that those who need guardians should get one; so under *Braughton*,—Steele's mere inquiry whether Maria had a guardian and could sign her name does not establish that Steele adequately protected her interests.  *See id.*

And the text messages also evidence Steele's skepticism about whether Maria had the capacity to sign the declaration.  *See* doc. 98-2.  The messages begin with Steele's firm telling Baker that they will send Baker—not Maria—Maria's declaration, something they would not have to do if Maria had the capacity to receive and sign the declaration.  *Id.*  The firm also

9

initially tells Baker that she "will need to sign on [Maria's] behalf," suggesting that Steele did not believe that Maria could sign for herself.  *Id.*  Baker tells Steele's firm that she is not Maria's legal guardian and that Maria can—with Baker's "help . . . with the spelling"—"write" her signature.  *Id.*  But writing her own signature does not mean having the capacity required for the declaration's statements to have veracity.

Steele also argues that Maria's signing of her declaration—which Steele drafted— "explicitly demonstrates her awareness of the proceedings and her rights."  *Id.* at 11.  He submits an authentication from Docusign suggesting that Maria indeed signed her declaration.  Doc. 98-3 at 6.  But Steele fails to present *any* evidence that Maria could actually (i) use a computer, (ii) use Docusign, or (iii) competently authorize someone to do so on her behalf.  The Court therefore finds Maria's supposed Docusign signature dubious as evidence that the declaration had evidentiary support for its contents.  Steele cites *Dorsey* to argue that "the authenticated execution of a written instrument creates a presumption of mental competence."  Doc. 98 at 10.  But as stated above, *Dorsey* is about an individual's competence to execute a codicil.  *See* 156 S.W.3d at 444–52.  Even if the case were on point, it holds that "[w]hen a will or codicil is challenged on the grounds . . . [of] testamentary capacity, the *proponents of the challenged instrument have the burden* to establish a prima facie case of due execution . . . and of the sound mind of the testatrix."  *Id.* at 446.  This calls into question Steele's statement that *Dorsey* creates a de facto presumption of mental competence by the very act of executing an authenticated instrument.

Finally, Steele challenges the Court's determination that Maria was incompetent.  Doc. 98 at 6.  He cites *Jones v. Missouri Department of Mental Health*, 4:25-cv-00080-SRW, 2025 WL 275859 (E.D. Mo. Jan. 23, 2025) for the proposition that "fundamental fairness requires

verifiable evidence before making findings regarding mental capacity." *Id.* (cleaned up). He claims that a court's finding of incompetence under *Jones* requires medical examinations, expert psychiatric or psychological evaluations, formal adjudication, and documentary evidence of mental health treatment. *Id.* Steele says that "[c]rucially, the [c]ourt in *Jones* condemned competency determinations based on casual observations or impressions formed during brief court proceedings." *Id.* He accuses the Court of making "a summary incompetency determination on based solely on observations during a single video hearing" and therefore "fail[ing] to meet the *Jones* standard." *Id.*

The Court first notes that—for all of the propositions Steele claims *Jones* establishes—he cites to nonexistent pages, specifically pages four, five, six, and seven of an opinion ending on the third page. *See id.*; *Jones*, 2025 WL 275859. Without wading into the debacle of whether Steele is misrepresenting statements of law, the Court finds that *Jones* does not establish Steele's arguments. In *Jones*, the court identified deficiencies in a self-represented plaintiff's complaint, and gave him a chance to amend it. *See Jones*, 2025 WL 275859 at *1. The court also found that the plaintiff was incapacitated and incompetent based on the written findings by the Missouri Department of Mental Health. *See id.* at *2. The court recognized that, while the federal rules of civil procedure "do[] not require a district court to make a sua sponte determination of competency, whenever a question exists regarding a plaintiff's mental capacity, a [c]ourt should inquire as to whether guardian ad litem should be appointed or whether the matter should be pursued by a next friend." *Id.* (emphasis removed).

*Jones* does not, however, establish a "standard" that requires courts determining incompetency to rely on medical examinations, expert psychiatric or psychological evaluations, formal adjudication, and documentary evidence of mental health treatment. Doc. 98 at 6. Nor

11

did the court "condemn[] competency determinations based on casual observations or impressions formed during brief court proceedings." *Id.* In fact, as *Jones* provides, here, the Court "inquire[d] as to whether guardian ad litem should be appointed" for Maria, doc. 78 at 1–2, and appointed her a guardian, *id.* at 4–5.

But even if *Jones* imposed a heightened standard to determine incompetency, that would not avail Steele. Rule 11 turns not on whether the Court followed *Jones*, but on whether the statements in Maria's declaration—which Steele drafted—had evidentiary support. *See* Fed. R. Civ. P. 11(b); *Adams*, 863 F.3d at 1077.

At the August 7 hearing, Steele even admitted to the Court that he did not even have any conversations with Maria before drafting her declaration on her wishes regarding the settlement. *See* doc. 90. Under these facts, Steele's purported "pre-filing inquiry" was a drive by, and it was definitely not a reasonable one. *See Adams*, 863 F.3d at 1077 (citing *Cooter & Gell*, 496 U.S. at 393). The Court finds that Steele either knew, or after reasonable investigation should have known, that the statements contained in Maria's declaration "are false or wholly unsupported." *King*, 71 F.4th at 521. The Court therefore finds that, when filing Maria's declaration, Steele violated his "duty . . . to certify that [he has] conducted a reasonable inquiry and . . . determined that [the declaration is] well[-]grounded in fact." *Adams*, 863 F.3d at 1077 (citing *Cooter & Gell*, 496 U.S. at 393).

### III.   Conclusion

Accordingly, the Court finds that Steele violated Rule of Civil Procedure 11(b). The Court thus imposes the following sanctions on Steele and The Steele Law Firm, as follows: a monetary sanction of $12,250, an amount the Court finds sufficient to serve the purposes of Rule 11. Rather than order Steele pay this amount to the Court, the Court orders Steele to pay this

amount to the wrongful-death beneficiaries in the same proportion as they shared in the settlement, as follows:

- Maria Loper:  $4,746.88 (the Court orders Steele to pay this amount directly into Maria's special needs trust);

- Mary Baker:  $4,746.87;

- Gary Loper:  $2,143.75;

- Altavian Saddler:  $612.50.

The Court further orders Steele to make these payments no later than June 12, 2026.

The Court also refers this matter to the Missouri Office of Disciplinary Counsel to conduct any investigations into the foregoing or any other conduct of Steele in connection with this matter, and impose any further sanctions the Office deems proper.  Beyond its findings above, the Court makes no other finding on any other possibly sanctionable conduct in which Steele engaged.

Let it be clear, the Court does not impose the foregoing sanctions lightly.  But every federal court "has a responsibility to see that justice is done." *United States v. Wofford*, 562 F.2d 582, 586 (8th Cir. 1977).  Courts discharge this responsibility by working every day "to secure a steady, upright, and impartial administration of the laws."  The Federalist No. 78 (Hamilton).  To leave Steele's sanctionable conduct unaddressed would violate the Court's responsibility.

If Steele had acted according to his ethical responsibilities, this case could have closed soon after February 6, 2025—when the parties first presented the Court with their settlement agreement.  *See* doc. 63.  Alternatively, the case would have been closed—albeit, unjustly—if the Court had turned a blind eye to Steele's treatment of Maria and approved a settlement agreement

13

that ignored her interests.  Considering everything that has transpired since February 6, 2025, the

Court—and presumably Steele—would have strongly preferred the first outcome.

    So ordered this 22nd day of May 2026.

 

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE